## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**RYAN MONROE,**

              **Plaintiff,**                              **Case No.:**

**v.**

**ROCKET MORTGAGE, LLC f/k/a**
**QUICKEN LOANS, LLC.,**

              **Defendant.**

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW, Plaintiff, RYAN MONROE, by and through his undersigned

counsel and sues the Defendant, ROCKET MORTGAGE, LLC f/k/a QUICKEN

LOANS, LLC ("ROCKET MORTGAGE") and states as follows:

### JURISDICTION AND VENUE

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331,

1367.

2.      Venue lies within the United States District Court for the Middle

District of Florida, Orlando Division because a substantial part of the events giving

rise to this claim occurred in this Judicial District and is therefore proper pursuant

to 28 U.S.C. 1391(b).

## PARTIES

3.    Plaintiff, RYAN MONROE, is an adult resident of Orange County, Florida.  At all times material, Plaintiff was an employee of Defendant within the meaning of the Family and Medical Leave Act, the Americans with Disabilities Act, and the Florida Civil Rights Act.

4.    Defendant, ROCKET MORTGAGE, is a Foreign Limited Liability Company authorized and doing business in this Judicial District.  At all times material, Defendant employed Plaintiff. At all times material, Defendant employed the requisite number of employees and, therefore, is an employer as defined by the Family and Medical Leave Act, the Americans with Disabilities Act, Title VII of the Civil Rights Act of 1964 and the Florida Civil Rights Act.

## GENERAL ALLEGATIONS

5.    At all times material, Defendant acted with malice and reckless disregard for Plaintiff's federal and state protected rights.

6.    At all times material, Plaintiff was qualified to perform his job duties within the legitimate expectations of his employer.

7.    Plaintiff has retained the undersigned counsel to represent him in this action and is obligated to pay them a reasonable fee for their services.

8.    Plaintiff requests a jury trial for all issues so triable.

## ADMINISTRATIVE PREREQUISITES

9.      On October 20, 2021, Plaintiff timely filed a Charge of Discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR").

10.     On March 23, 2022, the EEOC issued a Notice of Right to Sue related to Plaintiff's Charge of Discrimination.  This Complaint is filed within ninety (90) days of the issuance of the Notice of Right to Sue; therefore, Plaintiff has met all conditions precedent to filing this Complaint.

11.     Plaintiff has satisfied all conditions precedent, therefore jurisdiction over this claim is appropriate pursuant to Chapter 760, *Florida Statutes*, because more than one-hundred and eighty (180) days have passed since the filing of the Charge.

## FACTUAL ALLEGATIONS

12.      Plaintiff is a 44-year-old male with disabilities.  Specifically, Plaintiff has been diagnosed with and suffers from Human Immunodeficiency Virus (HIV), depression and anxiety.

13.     In 2005, Plaintiff was diagnosed with HIV.

14.     On October 24, 2006, Plaintiff began treating with an Infectious Disease doctor (Daniel Kaul, M.D.) and the University of Michigan.

15.     In 2009, Plaintiff began a variety of different medications and the side effects resulted in depression and anxiety. Plaintiff's supervisors were well-aware of his disabilities and need for accommodations

16.     In or around May 2005 Plaintiff began his employment with Defendant as a Closing Underwriter.  For the majority of Plaintiff's career with Defendant, Plaintiff worked from his home in Florida.

17.     During Plaintiff's employment with Defendant, Plaintiff received positive performance reviews and often exceeded expectations.  Moreover, Plaintiff won multiple MVP awards and did not receive disciplinary actions.

18.     In or around November 2013, Plaintiff filed his first claim for Short Term Disability benefits related to his disabilities.

19.     Plaintiff was out of work for approximately three (3) months, utilized leave under the Family and Medical Leave Act (FMLA), and returned in February 2014.

20.     When Plaintiff returned to work in February 2014, his doctor requested a 20-hour per week restriction, which Defendant approved, and Plaintiff worked under for six (6) months.

21.     At the conclusion of the six (6) months, Plaintiff was immediately returned to working 60 hours per week.  Plaintiff worked the long hours for roughly one (1) year.

22.     On November 25, 2015, Dr. Kaul provided Stacey Morris (Human Resources) with a note indicating that, due to Plaintiff's mental health issues, Plaintiff was unable to work as of November 16, 2015, that Plaintiff was under the care of his psychiatrist (Dr. Sajan) and Dr. Sajan would re-evaluate Plaintiff's readiness to return to work.   As a result, Plaintiff was out of work for approximately three (3) months on FMLA/Short Term Disability.

23.     Morris consistently treated Plaintiff like he was faking his mental health issues and made several derogatory comments in that regard.  For example, Morris regularly told Plaintiff that she could not trust him without a doctor's note despite her clear knowledge of Plaintiff's mental health disabilities, including Morris' knowledge of inpatient care for Plaintiff's disabilities.

24.     In fact, on one occasion Plaintiff told Morris: "I'm in a mental institution right now and you don't believe I have mental issues?"

25.     In addition, Defendant and its insurance company (Liberty Mutual) had someone follow Plaintiff around in 2015 because they believed Plaintiff was faking his mental health disabilities.

26.     On February 8, 2016, Dr. Kaul released Plaintiff to return to work at twenty-five (25) hours per week and to continue Plaintiff's treatment plan.

27.     On June 27, 2016, Dr. Kaul provided Morris with a note indicating that Plaintiff was released to work forty (40) hours per week beginning July 4, 2016

until December 20, 2016, at which time Plaintiff would be re-evaluated to determine whether he could work more than 40 hours per week.

28.     On November 3, 2016, Plaintiff emailed Eboni Hull (Team Leader) and LaKeela Hall (Director, Operations) and provided some suggestions of different schedules that he could work that could accommodate his disabilities, but still allow Plaintiff to work a full schedule and be productive.

29.     On November 7, 2016, Hall confirmed that Plaintiff could work 7:00 a.m. to 5:00 p.m. with a break from 11:00 a.m. to 1:00 p.m. for doctor's appointments.

30.     On February 3, 2020, Dr. Kaul provided Morris with a note indicating that Plaintiff was seen that day, was first unable to work on January 22, 2020, and would be able to resume his job duties on February 10, 2020.  It further noted that Plaintiff attended several doctor's appointments during that timeframe.

31.     On June 9, 2020, Dr. Kaul provided Morris with a note requesting that Plaintiff not be required to work more than eight (8) hours per day and 40 hours per week.  It further indicated that Plaintiff could work more than eight (8) hours per day or forty (40) hours per week at Plaintiff's discretion.

32.     Despite his doctor's request, Plaintiff was required to work upwards of 65 to 70 hours per week for nearly a year.  During this time, Plaintiff was told by Ken Province (Operations Director) and Cady Oesterreich (Team Leader) that

he could go back to working thirty (30) hours per week if it became too much for Plaintiff.

33.     In May 2021, Plaintiff suffered a mental breakdown and took an unpaid leave of absence until August 3, 2021.  However, Plaintiff was not offered leave under the Family and Medical Leave Act.

34.     On July 16, 2021, Plaintiff spoke to Oesterreich and told her that his doctor did not want him to work more than thirty (30) hours per week because Plaintiff could not adhere to his treatment plan and make his doctors' appointments.  Plaintiff also provided Oesterreich with a doctor's note indicating the same.  Oesterreich said that the accommodation should not be a problem since Defendant was slow at the time.

35.     On July 22, 2021, Oesterreich contacted Plaintiff and informed him that Defendant would not provide the accommodation, which resulted in Plaintiff being forced to resign.

36.     On August 5, 2021, Isabella Woodall (Associate Team Relations Specialist) emailed Plaintiff his separation letter.  Plaintiff responded and asked if he would receive his stock options since the paperwork stated that an employee retains his stock options if terminated due to disability.

37.     Plaintiff was forced to resign because Defendant would not honor his doctor's recommended accommodation for his disabilities.  Nevertheless, Woodall

responded and stated that Plaintiff would not qualify for accelerated vesting due to disability "or any other factor."

38.     Plaintiff was replaced by an individual outside of his protected classes.

## COUNT I
## FAMILY AND MEDICAL LEAVE ACT – INTERFERENCE

39.     Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through thirty-eight (38).

40.     Plaintiff is an individual entitled to protection under the Family and Medical Leave Act (FMLA), 29 U.S.C. §2601, *et seq.*

41.     Plaintiff is an eligible employee within the meaning of the FMLA because Plaintiff worked for Defendant for twelve (12) months, had at least 1,250 hours of service for the Defendant during twelve (12) months immediately preceding his eligible FMLA leave, and worked at a location where the Defendant had at least fifty (50) employees within seventy-five (75) miles.

42.     Defendant is a covered employer under the FMLA in that it had fifty (50) or more employees in twenty (20) or more work weeks in the current or preceding calendar year.

43.     Plaintiff suffered from a serious health condition within the meaning of the FMLA.

44.    Defendant's actions interfered with Plaintiff's lawful exercise of his FMLA rights.  Specifically, Defendant failed to provide Plaintiff with leave under the FMLA (block and intermittent) for which Plaintiff was qualified.

45.    Defendant's actions constitute violations of the FMLA.

46.    As a result of Defendant's unlawful actions, Plaintiff has suffered damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant:

a.    Back pay and benefits;

b.    Prejudgment interest on back pay and benefits;

c.    Front pay and benefits;

d.    Liquidated damages;

e.    Attorneys' fees and costs;

f.    Injunctive relief; and

g.    For any other relief this Court deems just and equitable.

## COUNT II
## AMERICANS WITH DISABILITIES ACT – DISCRIMINATION

47.    Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through thirty-eight (38).

48.    Plaintiff is an individual entitled to protection under the Americans with Disabilities Act, as amended, 42 U.S.C. §12112 *et seq*.

49.    Plaintiff is an employee within the meaning of the Americans with Disabilities Act, as amended.

50.     Plaintiff is an individual with a disability within the meaning of the Americans with Disabilities Act, as amended.   Specifically, Plaintiff's HIV, depression, and/or anxiety substantially limited one or more major life activities and/or one or more major bodily functions.

51.     Plaintiff was a qualified individual with a disability within the meaning of the Americans with Disabilities Act, as amended, because Plaintiff, with or without a reasonable accommodation, could perform the essential functions of his job.

52.     By the conduct described above, Defendant engaged in unlawful employment practices and discriminated against Plaintiff on account of his known disability, and/or because Defendant regarded him as having a disability, and/or because of Plaintiff's record of having a disability in violation of the Americans with Disabilities Act, as amended. Specifically, Defendant forced Plaintiff to resign from his employment and denied Plaintiff his vested stock options.

53.     The above-described acts of disability discrimination constitute a violation of the Americans with Disabilities Act, as amended, for which Defendant is liable.

54.     Defendant's unlawful and discriminatory employment practices toward Plaintiff were intentional.

55.    Defendant's unlawful and discriminatory employment practices were done with malice or with reckless indifference to the federal-protected rights of Plaintiff.

56.    As a result of Defendant's unlawful discrimination, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant:

   a.    Back pay and benefits;

   b.    Prejudgment interest on back pay and benefits;

   c.    Front pay and benefits;

   d.    Compensatory damages for emotional pain and suffering, inconvenience, loss of enjoyment of life and humiliation;

   e.    Attorneys' fees and costs;

   f.    Injunctive relief; and

   h.    For any other relief this Court deems just and equitable.

### COUNT III
### FLORIDA CIVIL RIGHTS ACT ("FCRA")
### DISABILITY/HANDICAP DISCRIMINATION

57.    Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through thirty-eight (38).

58.    Plaintiff is an individual entitled to protection under the Florida Civil Rights Act, *Fla. Stat.* §760, *et seq.*

59.     Plaintiff is an employee within the meaning of the Florida Civil Rights Act.

60.     Plaintiff is an individual with a disability/handicap within the meaning of the Florida Civil Rights Act.  Specifically, Plaintiff's HIV, depression and/or anxiety substantially limited one or more major life activities and/or one or more major bodily functions.

61.     Plaintiff was a qualified individual with a disability within the meaning of the Florida Civil Rights Act because Plaintiff, with or without a reasonable accommodation, could perform the essential functions of his job.

62.     By the conduct described above, Defendant engaged in unlawful employment practices and discriminated against Plaintiff on account of his known disability, and/or because Defendant regarded him as having a disability, and/or because of Plaintiff's record of having a disability in violation of the Florida Civil Rights Act.  Specifically, Defendant forced Plaintiff to resign from his employment and denied Plaintiff his vested stock options.

63.     The above-described acts of disability discrimination constitute a violation of the FCRA, for which Defendant is liable.

64.     Defendant's unlawful and discriminatory employment practices toward Plaintiff were intentional.

65.     Defendant's unlawful and discriminatory employment practices were done with malice or with reckless indifference to the state-protected rights of Plaintiff.

66.     As a result of Defendant's unlawful discrimination, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant:

   a.     Back pay and benefits;

   b.     Prejudgment interest on back pay and benefits;

   c.     Front pay and benefits;

   d.     Compensatory damages for emotional pain and suffering, inconvenience, loss of enjoyment of life and humiliation;

   e.     Attorneys' fees and costs;

   f.     Injunctive relief; and

   h.     For any other relief this Court deems just and equitable.

## COUNT IV
## AMERICANS WITH DISABILITIES ACT –
## FAILURE TO ACCOMMODATE

67.     Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through thirty-eight (38).

68.     Plaintiff is an individual entitled to protection under the Americans with Disabilities Act, as amended, 42 U.S.C. §12112 *et seq.*

69.     Plaintiff is an employee within the meaning of the Americans with Disabilities Act, as amended.

70.     Plaintiff is an individual with a disability within the meaning of the Americans with Disabilities Act, as amended. Specifically, Plaintiff's HIV, depression, and/or anxiety substantially limited one or more major life activities and/or one or more major bodily functions.

71.     Plaintiff was a qualified individual with a disability within the meaning of the Americans with Disabilities Act, as amended, because Plaintiff, with or without a reasonable accommodation, could perform the essential functions of his job.

72.     By the conduct described above, Defendant engaged in unlawful employment practices and discriminated against Plaintiff on account of his disability in violation of the Americans with Disabilities Act, as amended. Specifically, Defendant failed to provide Plaintiff with a reasonable accommodation for his disabilities.

73.     The above-described act of disability discrimination constitutes a violation of the Americans with Disabilities Act, as amended, for which Defendant is liable.

74.     Defendant's unlawful and discriminatory employment practices toward Plaintiff were intentional.

75.     Defendant's unlawful and discriminatory employment practices were done with malice or with reckless indifference to the federal-protected rights of Plaintiff.

76.     As a result of Defendant's unlawful discrimination, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant:

      a.      Back pay and benefits;

      b.      Prejudgment interest on back pay and benefits;

      c.      Front pay and benefits;

      d.      Compensatory damages for emotional pain and suffering, inconvenience, loss of enjoyment of life and humiliation;

      e.      Attorneys' fees and costs;

      f.      Injunctive relief; and

      h.      For any other relief this Court deems just and equitable.

## COUNT V
## FLORIDA CIVIL RIGHTS ACT ("FCRA")
## DISABILITY/HANDICAP DISCRIMINATION –
## FAILURE TO ACCOMMODATE

77.     Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through thirty-eight (38).

78.     Plaintiff is an individual entitled to protection under the Florida Civil Rights Act, *Fla. Stat.* §760, *et seq.*

79.     Plaintiff is an employee within the meaning of the Florida Civil Rights Act.

80.     Plaintiff is an individual with a disability/handicap within the meaning of the Florida Civil Rights Act.  Specifically, Plaintiff's HIV, depression and/or anxiety substantially limited one or more major life activities and/or one or more major bodily functions.

81.     Plaintiff was a qualified individual with a disability within the meaning of the Florida Civil Rights Act because Plaintiff, with or without a reasonable accommodation, could perform the essential functions of his job.

82.     By the conduct described above, Defendant engaged in unlawful employment practices and discriminated against Plaintiff on account of his disability in violation of the Florida Civil Rights Act.  Defendant failed to provide Plaintiff with a reasonable accommodation for his disabilities.

83.     The above-described acts of disability discrimination constitute a violation of the FCRA, for which Defendant is liable.

84.     Defendant's unlawful and discriminatory employment practices toward Plaintiff were intentional.

85.     Defendant's unlawful and discriminatory employment practices were done with malice or with reckless indifference to the state-protected rights of Plaintiff.

86.     As a result of Defendant's unlawful discrimination, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant:

      a.     Back pay and benefits;

      b.     Prejudgment interest on back pay and benefits;

      c.     Front pay and benefits;

      d.     Compensatory damages for emotional pain and suffering, inconvenience, loss of enjoyment of life and humiliation;

      e.     Attorneys' fees and costs;

      f.     Injunctive relief; and

      h.     For any other relief this Court deems just and equitable.

## COUNT VI
## AMERICANS WITH DISABILITIES ACT – RETALIATION

87.     Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through thirty-eight (38).

88.     Plaintiff engaged in protected activity under the Americans with Disabilities Act, as amended.   Specifically, Plaintiff requested reasonable accommodations for his disability.

89.     Plaintiff suffered adverse employment actions for engaging in protected activity under the Americans with Disabilities Act, as amended.

Specifically, Defendant forced Plaintiff to resign from his employment and denied Plaintiff his vested stock options.

90.    Defendant's adverse employment action was causally connected to Plaintiff's engagement in protected activity.

91.    The above-described act of retaliation constitutes a violation of the Americans with Disabilities Act, as amended, 42 U.S.C. § 12112 *et seq.*

92.    Defendant's unlawful and retaliatory employment practices toward Plaintiff were intentional.

93.    Defendant's unlawful and retaliatory employment practices were done with malice or with reckless indifference to the federal-protected rights of Plaintiff.

94.    As a result of Defendant's unlawful retaliation, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant:

a.    Back pay and benefits;

b.    Prejudgment interest on back pay and benefits;

c.    Front pay and benefits;

d.    Compensatory damages for emotional pain and suffering, inconvenience, loss of enjoyment of life and humiliation;

e.    Attorneys' fees and costs;

f.    Injunctive relief; and

g.    For any other relief this Court deems just and equitable.

## COUNT VII
## FLORIDA CIVIL RIGHTS ACT ("FCRA") - RETALIATION

95.   Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through thirty-eight (38).

96.   Plaintiff engaged in protected activity under the Florida Civil Rights Act (FCRA).  Specifically, Plaintiff requested reasonable accommodations for his disability.

97.   Plaintiff suffered an adverse employment action for engaging in protected activity under the FCRA.  Specifically, Defendant terminated Plaintiff's employment.

98.   Defendant's adverse employment action was causally connected to Plaintiff's engagement in protected activity.

99.   The above-described act of retaliation constitutes a violation of the Florida Civil Rights Act, *Fla. Stat.* § 760, *et seq.*

100.   Defendant's unlawful and retaliatory employment practices toward Plaintiff were intentional.

101.   Defendant's unlawful and retaliatory employment practices were done with malice or with reckless indifference to the state-protected rights of Plaintiff.

102.   As a result of Defendant's unlawful retaliation, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant:

    a.    Back pay and benefits;

    b.    Prejudgment interest on back pay and benefits;

    c.    Front pay and benefits;

    d.    Compensatory damages for emotional pain and suffering, inconvenience, loss of enjoyment of life and humiliation;

    e.    Attorneys' fees and costs;

    f.    Injunctive relief; and

    g.    For any other relief this Court deems just and equitable.

## <u>DEMAND FOR JURY TRIAL</u>

103.    Plaintiff, RYAN MONROE, demands a trial by jury on all issues so triable.

**DATED** this 7th day of June 2022.

**FLORIN GRAY BOUZAS OWENS, LLC**

*Gregory A. Owens*
**GREGORY A. OWENS, ESQUIRE**
Florida Bar No.: 51366
greg@fgbolaw.com
**WOLFGANG M. FLORIN, ESQUIRE**
Florida Bar No.: 907804
wolfgang@fgbolaw.com
16524 Pointe Village Drive, Suite 100
Lutz, Florida 33558
(727) 254-5255
(727) 483-7942 (fax)
*Trial Attorneys for Plaintiff*