UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RYAN MONROE,

      Plaintiff,

v.                                                      Case No: 8:22-cv-1834-CEH-NHA

ROCKET MORTGAGE, LLC,

      Defendant.

_____/

## ORDER

In this employment discrimination action, Plaintiff Ryan Monroe sues his former employer Defendant Rocket Mortgage, LLC, under the Family Medical Leave Act, 29 U.S.C. § 2601, *et seq.* ("FMLA"); the Americans with Disabilities Act, 42 U.S.C. § 12112, *et seq* ("ADA"); and the Florida's Civil Rights Act, Fla. Stat. § 760, *et seq.* ("FCRA"). Doc. 1. Before the Court are the parties' cross motions for summary judgment (Docs. 33, 35), responses in opposition (Docs. 45, 48), Rocket Mortgage's reply (Doc. 49), and the parties' Stipulation of Agreed Material Facts (Doc. 47). Additionally, the parties filed deposition transcripts, email communications, declarations, medical records, and other documents in support of their respective motions. *See* Docs. 33-1–33-17; 34-1–34-10; 36; 36-1–9; 37; 38-1; 39-1–3; 40; 41-1–41-11; 46. Plaintiff seeks summary judgment on his FMLA interference claim and his failure to accommodate claims under the ADA and FCRA. Defendant seeks judgment in its favor on all of Plaintiff's claims. After careful consideration of the parties'

submissions, including deposition transcripts, affidavits, memoranda of counsel and accompanying exhibits, and for the reasons that follow, Plaintiff's Motion for Partial Summary Judgment (Doc. 33) will be denied, and Defendant's Motion for Summary Judgment (Doc. 35) will be granted.

## I.   BACKGROUND[1]

### A.   Undisputed Facts[2]

Plaintiff Ryan Monroe ("Plaintiff" or "Monroe") began his employment with Defendant Rocket Mortgage, LLC ("Defendant" or "Rocket Mortgage") on May 16, 2005.  Doc. 47 ¶ 1. Monroe's employment with Rocket Mortgage ended on August 1, 2021. *Id.* ¶ 2. On that date, Monroe sent a resignation email to his Team Leader, Cady Oesterreich stating:

> Hi Cady. Thank you so much for all the info. Well since my
> doctor note[3] does not want me working more than 30 hours

---

[1] The Court has determined the facts, which are undisputed unless otherwise noted, based on the parties' submissions, including declarations and exhibits, as well as the parties' Joint Stipulation of Agreed Material Facts (Doc. 47). For purposes of summary judgment, the Court presents the facts in the light most favorable to the non-moving party as required by Fed. R. Civ. P. 56.

[2] Unless otherwise indicated, these facts are taken from the parties' Stipulation of Agreed Material Facts (Doc. 47).

[3] In his deposition, Monroe testified that he gave a July 2015 doctor's note to Oesterreich. Doc. 41-1 at 70, 74-75, 87-88, 99-100. The note, authored by Monroe's Michigan doctor, Dr. Daniel Kaul, and dated July 15, 2021, states that the patient [Monroe] is asking that his schedule return to 30 hours per week in order to attend in-person medical appointments. Doc. 41-7. Dr. Kaul's records reveal that Monroe contacted Dr. Kaul's nurse, Mark, on July 15, 2021, requesting an updated work letter that states that "now that Covid vaccine is out Ryan is able to start going to his appointments again so please allow him back to the 30 hours per week requirement so he can make all his appointments." Doc. 39-3 at 2-3. Dr. Kaul signed this letter, which was dated July 15, 2021, at Monroe's request without evaluating Monroe. Monroe's response argues that whether Plaintiff provided the note to Rocket Mortgage is immaterial. Doc. 48 at 11. Similarly, Monroe's motion does not argue that the note was ever delivered to Rocket Mortgage. Doc. 33 at 9. Rather, he cites to his August 1,

this is forcing me to quit. The messed up thing was when I was on the 30 hours and agreed to help out more during Covid both HR and my leadership said if it ever becomes too much you can go back on the 30 hours any time. And even you said a couple weeks ago you thought it would be no problem because you knew those were the circumstances so whoever made this new random decision to not allow it now even during a slow time is a real piece of work. Anyway I am happy that I can leave here with my [head] held high that I did a great job for 16 years and never did anything but help this company grow. I do want to say that you have been an amazing team leader and I appreciate you. Today august (sic) 1st will be my last day with the company[.] And as of august (sic) second I will not be with the company.

Doc. 36-9.

Prior to the end of his employment with Rocket Mortgage, Monroe held the position of underwriter in the Company's Client Experience Operations business ("CEOps"). Doc. 47 ¶ 3. He was a hard-working employee who received above-average performance reviews with no disciplinary conduct. Doc. 41-1 at 102–03. During his tenure with Rocket Mortgage, Monroe applied for leave pursuant to the FMLA and for an accommodation pursuant to the ADA. Doc. 47 ¶¶ 4, 5.

---

2021 resignation email to Oesterreich referencing a doctor's note. *Id.* Plaintiff argues that Swift should have inquired further about the doctor's note after Oesterreich forwarded the August 1 email to Swift and Swift became aware that there was a doctor's note. *Id.* August 1st was a Sunday. Oesterreich forwarded Monroe's August 1 email to Swift and others on Monday August 2, 2021, which would have been after Monroe had already resigned. Doc. 33-1 at 1–2. Oesterreich testifies she never received the note. Doc. 41-5 at 35. Additionally, Rocket Mortgage submits the declaration of Amy Courtney, a Principal Data Analyst at Rocket Mortgage, who attests that she conducted a thorough search of Rocket Mortgage's network for any documents, e-mails, instant messages or other communication from Monroe or his healthcare provider containing a doctor's note dated July 15, 2021, and no such document exists. Doc. 37 ¶¶ 6, 7, 8.

On January 28, 2020, Monroe requested an accommodation in the form of a reduced 30-hour work week due to health-related issues. *Id.* ¶ 6. On January 30, 2020, Rocket Mortgage provided Monroe with a "Reasonable Accommodation Packet," which included documents for both Monroe and his healthcare provider to complete. *Id.* ¶ 7. The Reasonable Accommodation Packet was completed and returned to Rocket Mortgage. *Id.* ¶ 8.

On February 17, 2020, Rocket Mortgage granted Plaintiff's request for an accommodation for a period of six months up to and until August 17, 2020. *Id.* ¶ 9. Monroe did not request to extend the 30-hour work week accommodation in 2020, so the accommodation expired on August 17, 2020, as originally planned. *Id.* ¶ 10. From May 4, 2021 through August 4, 2021, Plaintiff was on an approved, unpaid personal leave of absence. *Id.* ¶ 11.

On July 8, 2021, prior to the expiration of his personal leave, Monroe contacted his Team Relations Specialist ("TRS"), LaMont Swift, via email, and requested an extension of his unpaid personal leave. *Id.* ¶ 12. Monroe stated that if there was an issue with extending his personal leave, he would get his doctors involved to request FMLA. *Id.* ¶ 13. Swift advised Monroe that personal leaves are only permitted for up to 90 days under Company policy, and if Monroe would like to extend his leave beyond August 2021 for medical reasons, he would need to have his healthcare provider complete the "Leave Request Form," which was attached to Swift's email, and return it. *Id.* ¶ 14; Doc. 36-8. The Leave Request Form was never returned to Rocket Mortgage. Doc. 47 ¶ 15.

4

On July 13, 2021, Monroe contacted Oesterreich and told her he was exploring ways to either extend his sabbatical or reduce his working hours to 30 hours per week. *Id.* ¶ 16. Monroe told Oesterreich that he was seeking to reduce his working hours to attend therapy and workshop appointments for his mental health.[4] *Id.* ¶ 17. Oesterreich testified that she understood that Plaintiff was seeking a "business accommodation" from the operations-side of the Company, while also speaking with Swift about an ADA accommodation. *Id.* ¶ 18. Following her conversation with Monroe, Oesterreich contacted her senior leadership team to discuss Monroe's request. *Id.* ¶ 19. The senior leadership team for CEOps, which included Vice President LaShandra Sartor, ultimately made the decision to deny what they understood to be Monroe's request for a business accommodation. *Id.* ¶ 20. On August 1, 2021, Plaintiff emailed Oesterreich stating, among other things, that August 1, 2021, would be his last day with the Company. *Id.* ¶ 21; Doc. 36-9.

## B.    Procedural Background

Monroe initiated this action against his former employer Rocket Mortgage on June 7, 2022. Doc. 1. The Court has original jurisdiction under 28 U.S.C. § 1331 based on the federal claims under the FMLA and ADA, and supplemental jurisdiction of the

---

[4] Plaintiff's Complaint alleges that he has been diagnosed and suffers from Human Immunodeficiency Virus (HIV), depression, and anxiety. Doc. 1 ¶ 12. Monroe further alleges that his HIV, depression and/or anxiety substantially limit one or more major life activities and/or one or more major bodily functions. *Id.* ¶¶ 50, 60, 70, 80. In his response to Rocket Mortgage's Motion for Summary Judgment, Monroe concedes any ADA and FCRA claims related to his HIV status. Doc. 48 at 2 n.2. Thus, the Court does not consider Monroe's HIV status for purposes of Plaintiff's ADA and FCRA claims.

state law claims under 28 U.S.C. § 1367. In his seven-count complaint, Monroe sues Rocket Mortgage for alleged interference under the FMLA, discrimination and failure to accommodate under the ADA, disability discrimination and failure to accommodate under the FCRA; and retaliation under the ADA and FCRA. Doc. 1. Before the Court is Plaintiff's Motion for Partial Summary Judgment (Doc. 33) in which he seeks judgment in his favor on liability for his claims in Counts I (FMLA interference), IV (ADA failure to accommodate), and V (FCRA failure to accommodate) of the Complaint. Doc. 33. Rocket Mortgage opposes the motion. Doc. 45.

On November 13, 2024, Rocket Mortgage filed its motion for summary judgment on all claims of the complaint. Doc. 35. Monroe responded in partial opposition[5] (Doc. 48), and Rocket Mortgage replied (Doc. 49).

## II.   LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact. *Celotex*, 477 U.S. at 323; *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256,

---

[5] Plaintiff conceded his claims for retaliation and any claim based on his HIV status. *See* Doc. 48 at 2 n.1, 14.

6

1259–60 (11th Cir. 2004). That burden can be discharged if the moving party can show the court that there is "an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing that there is a genuine issue of material fact. *Id.* at 324. Issues of fact are "genuine only if a reasonable jury, considering the evidence present, could find for the nonmoving party," and a fact is "material" if it may affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). In determining whether a genuine issue of material fact exists, the court must consider all the evidence in the light most favorable to the nonmoving party. *Celotex*, 477 U.S. at 323. However, a party cannot defeat summary judgment by relying upon conclusory allegations. *See Hill v. Oil Dri Corp. of Ga.*, 198 F. App'x 852, 858 (11th Cir. 2006).

The standard of review for cross-motions for summary judgment does not differ from the standard applied when only one-party files a motion, but simply requires a determination of whether either of the parties deserves judgment as a matter of law on the facts that are not disputed. *Am. Bankers Ins. Group v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005). The Court must consider each motion on its own merits, resolving all reasonable inferences against the party whose motion is under consideration. *Id.* The Eleventh Circuit has explained that "[c]ross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts

that are not genuinely disputed." *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984). Cross-motions may, however, be probative of the absence of a factual dispute where they reflect general agreement by the parties as to the controlling legal theories and material facts. *Id.* at 1555–56.

## III.    DISCUSSION

Monroe sues Rocket Mortgage under state and federal laws, alleging he was forced to resign when Rocket Mortgage interfered with his rights under the FMLA and failed to provide him FMLA leave; discriminated against him because of his disability in violation of the ADA and FCRA; failed to accommodate him under the ADA and FCRA; and retaliated against him in violation of the ADA and FCRA.

### A.    FMLA - Interference

In Count I of Monroe's Complaint, he sues Rocket Mortgage for FMLA interference. He alleges that he is a qualified individual under the FMLA who suffered from a serious health condition. He claims Rocket Mortgage's actions interfered with the exercise of his FMLA rights when Rocket Mortgage failed to provide Monroe with block or intermittent leave under the FMLA for which he asserts he was qualified. Doc. 1 ¶¶ 39–46.

Congress enacted the Family and Medical Leave Act "to entitle employees to take reasonable leave for medical reasons . . . ." 29 U.S.C. § 2601(b)(2). To that end, the FMLA provides eligible employees with the right to a total of 12 workweeks of leave during any 12-month period "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." *Id.* §

2612(a)(1)(D). Leave that is taken for the reason articulated in subparagraph (a)(1)(D) "may be taken intermittently or on a reduced leave schedule when medically necessary." *Id.* § 2612(b)(1). Additionally, an employer may require that a request for leave taken under this subsection "be supported by a certification issued by the health care provider of the eligible employee[.]" *Id.* § 2613(a).

Under the FMLA, it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" by the Act. *Id.* § 2615(a)(1). "An [FMLA] interference claim has two elements: (1) the employee was entitled to a benefit under the FMLA, and (2) [his] employer denied that benefit." *White v. Beltram Edge Tool Supply, Inc.*, 789 F.3d 1188, 1191 (11th Cir. 2015). To succeed on such a claim, the employee need only demonstrate by a preponderance of the evidence that he was entitled to an FMLA benefit that was denied. *Batson v. Salvation Army*, 897 F.3d 1320, 1331 (11th Cir. 2018). The Department of Labor has clarified that interfering with the exercise of an employee's rights "include[s], for example, not only refusing to authorize FMLA leave, but discouraging any employee from using such leave." 29 C.F.R. § 825.220(b); *see Corbin v. Med. Ctr., Navicent Health*, No. 5:15-cv-153(CAR), 2017 WL 1241430, at *2 (M.D. Ga. Mar. 31, 2017) (explaining that the FMLA does not define "interference," but the regulations provide that "interference" includes discouraging an employee from using leave). The employer's motives are irrelevant to an interference claim. *Batson*, 897 F.3d at 1331. Additionally, a plaintiff seeking to prove FMLA interference must demonstrate that the violation prejudiced him in some way. *Evans v. Books-A-Million*, 762 F.3d 1288,

1295 (11th Cir. 2014). Thus, "a technical FMLA violation is not enough." *Ramji v. Hosp. Housekeeping Sys., LLC*, 992 F.3d 1233, 1241 (11th Cir. 2021). To prove that an FMLA violation prejudiced him, a plaintiff "need only demonstrate some harm remediable by either damages or equitable relief." *Evans*, 762 F.3d at 1296 (internal quotation marks omitted).

Monroe seeks summary judgment in his favor on his FMLA interference claim, arguing that he is an eligible employee because he was employed by Rocket Mortgage for at least 12 months and worked at least 1,250 hours during the previous 12-month period. Doc. 33 at 19-24. Rocket Mortgage does not contest that Monroe may have been eligible for FMLA leave. Doc. 45 at 15. He further contends that he told his Team Leader Oesterreich that he wanted a 30-hour reduced work schedule in order to attend therapy appointments.

For purposes of its motion, Rocket Mortgage acknowledges that Monroe may have been eligible for FMLA due to a triggering event, but it argues that Monroe cannot prevail on his claim because he failed to comply with the notice requirements and to timely return the physician's certification supporting the leave request. Doc. 35 at 23–25. The Court agrees.

The Regulations require that notice be given. 29 C.F.R. § 825.302(a). Notice must satisfy two criteria: timing and content. *Beltram Edge Tool Supply*, 789 F.3d at 1195. The timing is tied to whether notice was foreseeable or unforeseeable.  If an employee's need for leave is foreseeable, he must give his employer at least 30 days' advance notice, or if 30 days is not practicable, then as soon as practicable. *See* 29

10

C.F.R. § 825.302(a). If notice is unforeseeable, as Monroe contends, however, then notice must be given "as soon as practicable given the facts and circumstances of the particular case." *See* 29 C.F.R. § 825.303(a).

In general, an employee need not expressly mention the FMLA to satisfy the notice requirement. *See id.* §§ 825.302(c); 825.303(b) ("When an employee seeks leave for the first time for a FMLA–qualifying reason, the employee need not expressly assert rights under the FMLA or even mention the FMLA."); *see also Cruz v. Publix Super Mkts., Inc.*, 428 F.3d 1379, 1383 (11th Cir. 2005) ("An employee is not required to assert expressly her right to take leave under the FMLA."). However, "[w]hen an employee seeks leave due to an FMLA–qualifying reason, for which the employer has previously provided FMLA–protected leave, the employee must specifically reference the qualifying reason for leave or the need for FMLA leave." 29 C.F.R. § 825.302(c); *see also id.* § 825.303(b). It is undisputed that Monroe previously sought FMLA-protected leave during his employment.

Here, Monroe claims that notice was unforeseeable. Accepting this fact as true, then he was required to provide Rocket Mortgage with "sufficient information for [Rocket Mortgage] to reasonably determine whether the FMLA may apply to the leave request." 29 C.F.R. § 825.303(b). He did not do so. Significant here, "[w]hen the need for leave is not foreseeable, an employee must comply with the employer's usual and

customary notice and procedural requirements for requesting leave, absent unusual circumstances." 29 C.F.R. § 825.303(c).[6]

To support that adequate notice was properly given, Monroe submits that he "informed his chain-of-command and Team Relations/HR that he desired time off of work and that it was due to his need to attend therapy and workshops." Doc. 33 at 20. Monroe's statement was to his Team Leader, Cady Oesterreich. Oesterreich testified that Monroe contacted her about a business accommodation for a 30-hour workweek, while he was also exploring other options to extend his sabbatical with the team relations specialist ("TRS"), LaMont Swift. Doc. 41-5 at 24–25. Oesterreich knew that Monroe was attempting to "reduce his working hours in order to be able to attend therapy and workshop appointments." *Id.* at 26. Although they did not discuss the appointments in any greater depth, Oesterreich understood that he was attending therapy sessions for his mental health issues. *Id.* Even accepting that these facts put Oesterreich on notice as to a potential FMLA-qualifying reason, she understood that Monroe was working with TRS Swift as it related to a medical request or

_____

[6] Monroe argues that Rocket Mortgage did not comply with its own procedures because it did not give him the same Accommodation Packet previously provided and instead gave him a leave request form. But he has no evidence that the Leave Request Form provided to him by Swift was not part of Rocket Mortgage's standard procedures. Rocket Mortgage has submitted the Declaration of Ashley Attaway, who manages and oversees the company's Team Relations Department, and she attests that "[o]nce a Team Member contacts their TRS regarding their need for leave or an accommodation, the TRS then provides the Team [Member] with the appropriate paperwork to complete in order to begin the accommodation process, typically in the form of a Request for Leave or a Reasonable Accommodation Packet." Doc. 36 ¶ 17. There is no evidence that the request form provided by Swift was an incorrect form or inconsistent with Rocket Mortgage's own procedures.

accommodation. Doc. 41-5 at 28. As Monroe's Team Leader, Oesterreich did not have the ability or authority to process ADA or FMLA leave requests. *Id.* Those requests were handled by team relations specialists. *Id.* at 31. Monroe submits that Oesterreich's email with the subject line "ADA accommodation" demonstrated notice, but Oesterreich clarified in her deposition that this was a reference to Monroe's dealings with Swift regarding obtaining the documentation he needed to process any request with Team Relations.

It is undisputed that Monroe was familiar with, had previously applied, and was approved for FMLA leave and/or accommodations for reduced hours in 2014, 2015, and 2020 while employed with Rocket Mortgage. Doc. 47 ¶ 4; Doc. 41-1 at 27–29; Doc. 33-5. When he sought leave in 2021, Monroe testified he did not want to go through the doctor's notes and answering questions. *See* Doc. 41-1 at 63 (Monroe testified, "that's why I took it unpaid, because I didn't want to deal with talking to them about my medical issues."). He did not request FMLA leave for this time. Doc. 41-1 at 90. Monroe knew that his personal leave time in 2021 was capped at 90 days.[7] As the end of the 90-day period was approaching, Monroe hoped that the company would be willing to extend his personal leave another six months. Doc. 41-1 at 68 (Monroe

---

[7] When Monroe took his 90-day personal leave of absence in May through August, 2021, it was unpaid. He testified that he did not want to go through having to send documentation every day. Doc. 41-1 at 59-60. He was approved for the 90 days of personal leave beginning May 4, 2021. *Id.* at 60. He received communication from Linda Villarosa, leave of absence specialist, advising that personal leaves are 90 calendar days. *Id.* His request was made in March 2021, and he used his PTO from the end of March, through the month of April, until beginning his personal leave on May 4, so he actually had four-and-a-half months off from the end of March to the beginning of August. *Id.* at 62.

13

testified, "Yes, I know they told me 90 days and I agreed, but then I was just very nicely asking if I could extend it. I figured with them slowing down and they wouldn't have to pay me, it would be no skin off their back."). Monroe emailed Swift stating that if it is going to be a problem, he will get his doctors involved to request FMLA. Doc. 47 ¶ 13. Swift specifically advised Monroe that if he was seeking leave beyond August 2021 for health/medical issues that he should have his doctor complete and return the "Leave Request Form." Doc. 36-8. Swift provided the form to Monroe in the email. Doc. 36-8 at 4. Monroe did not communicate with Swift any further after this. Doc. 41-1 at 72. It is undisputed that neither Monroe, nor his doctor, returned the completed leave request form to Rocket Mortgage.[8] Doc. 47 ¶ 15. Monroe's failure to respond with any medical support for his request for a reduced work schedule wholly undermines his claim of FMLA interference.

"An employee has the right to take FMLA leave only if [he] suffers from a 'serious health condition' that makes [him] 'unable to perform the functions of his position.'" *Beltram Edge Tool Supply, Inc.*, 789 F.3d at 1194 (quoting *Hurley v. Kent of Naples, Inc.*, 746 F.3d 1161, 1166 (11th Cir. 2014)). The Regulations define a "serious health condition" as "an illness, injury, impairment, or physical or mental condition that involves, . . . continuing treatment by a health care provider." 29 U.S.C. § 2611(11)(B). "The employee cannot merely demand leave; he must give the employer

---

[8] In his deposition, Monroe testified that he did not know if he returned the completed form. Doc. 41-1 at 72. Since Monroe's deposition, the parties have stipulated that the form was never returned to Rocket Mortgage. Doc. 47 ¶ 15.

a reason to believe that he is entitled to it." *Cruz*, 428 F.3d at 1385. Here, Monroe made the statement to Swift that he may have to get his doctors involved for FMLA but then failed to complete the Leave Request form.[9] As previously indicated, an employer may require an employee to support his need for leave due to a "serious health condition that makes the employee unable to perform one or more of the essential functions of the employee's position, . . . by a certification issued by the health care provider of the employee." 29 C.F.R. § 825.305(a). Monroe's failure to comply with Rocket Mortgage's procedure by not returning the leave request form is fatal to his interference claim.

In his motion, Monroe additionally argues that Rocket Mortgage failed to provide him with statutory notice regarding his FMLA eligibility. As Rocket Mortgage's response points out, Monroe's argument that Rocket Mortgage did not provide Monroe with proper notice under the FMLA was never a theory raised in the Complaint. Accordingly, the Court will not now consider a theory of recovery raised by Monroe for the first time on summary judgment because "plaintiffs may not raise new claims at the summary judgment stage." *Beltram Edge Tool Supply*, 789 F.3d at 1200 (finding no error in district court's refusal to consider theory regarding

---

[9] The Leave Request form requires the physician to identify the employee's anticipated restricted dates and the employee's impairment. Doc. 36-8 at 4. Although Monroe argues this was not the correct form for his situation where he was not looking to be out on leave completely but rather wanted a 30-hour workweek accommodation, this form allowed a physician to identify alternative accommodations that would allow the employee to perform his job. *See id.*

defendant's failure to give proper notice under the FMLA where that cause of action was not stated in plaintiff's complaint).

Because the undisputed facts show that Rocket Mortgage did not interfere with Monroe's exercise of FMLA benefits, Rocket Mortgage is entitled to summary judgment on this claim. Monroe was familiar with and had applied for FMLA leave in the past. When he indicated to Swift that he may be getting his doctor involved for purposes of FMLA benefits, Swift provided Monroe with the appropriate form, which neither Monroe nor his doctor returned to anyone at Rocket Mortgage. Monroe failed to comply with Rocket Mortgage's usual and customary notice requirements and failed to timely return the physician's certification form as required by 29 C.F.R. § 852.305(b). Even accepting that Monroe's statement to Oesterreich that he wanted a 30-hour workweek to attend therapy appointments or his August 1 resignation email referencing a doctor's note made Oesterreich aware of a potential FMLA-qualifying event, Monroe still failed to comply with Rocket Mortgage's procedures and provide a doctor's certification.

The Eleventh Circuit has held that the employee bears the responsibility to furnish a complete and sufficient certification to allow the employer to assess the request, or to provide his healthcare provider with the necessary authorization so that his healthcare provider can "release a complete and sufficient certification to the employer to support the employee's FMLA request." *Walker v. United Parcel Serv., Inc.*, No. 21-11267, 2022 WL 10083816, at *2 (11th Cir. Oct. 17, 2022) (quoting 29 C.F.R. § 825.305(d)). "If the employee never produces the certification, the leave is not FMLA

leave." *Id.* (quoting 29 C.F.R. § 825.313(b)). And there can be no FMLA interference where Plaintiff has not established he is entitled to FMLA leave. Rocket Mortgage's motion for summary judgment on this claim is due to be granted.

### B.   ADA and FCRA – Discrimination[10]

In his Complaint, Monroe sues Rocket Mortgage for disability discrimination in violation of the ADA (Count II) and the FCRA (Count III). Doc. 1 ¶¶ 47–66. Monroe alleges that he is a qualified individual with a disability within the meaning of the ADA and the FCRA due to HIV, depression and/or anxiety.[11] *Id.* ¶¶ 50, 60.  In his motion, Plaintiff asserts that he is disabled due to stress, anxiety, and insomnia. Doc. 33 at 3; Doc. 33-4 at 2. Monroe alleges he was forced to resign because Rocket Mortgage would not honor his doctor's recommended accommodations for his disabilities. Doc. 1 ¶ 37.

The ADA prohibits discrimination in employment "against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). "To establish a *prima facie* case of employment discrimination under the ADA, a plaintiff must show that at the time of the adverse employment action, [he] (1) had a disability, (2) was a qualified individual, and (3) was subjected to unlawful discrimination because of [his] disability." *Batson*, 897 F.3d at 1326.

---

[10] "Claims raised under the Florida law [FCRA] are analyzed under the same framework as the ADA."  *Greenberg v. BellSouth Telecommc'ns, Inc.*, 498 F.3d 1258, 1263–64 (11th Cir. 2007) (citing *Chanda v. Engelhard/ICC*, 234 F.3d 1219, 1221 (11th Cir. 2000)).

[11] As previously noted, although Plaintiff's Complaint alleged disability due to HIV, depression, and/or anxiety (Doc. 1 ¶¶ 50, 60), Monroe concedes any claim related to his HIV status. Doc. 48 at 2, n.1.

Where a plaintiff relies on circumstantial rather than direct evidence of discrimination, as Monroe does here, courts apply the *McDonnell-Douglas* burden-shifting framework. *Todd v. Fayette Cnty. Sch. Dist.*, 998 F.3d 1203, 1215 (11th Cir. 2021); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). If the employee is successful in making a *prima facie* case by establishing the three elements above, the burden of production shifts to the employer to articulate a legitimate, non-discriminatory reason for its decision. *Todd*, 998 F.3d at 1216. The employer's burden is "exceedingly light." *Perryman v. Johnson Prods. Co.*, 698 F.2d 1138, 1142 (11th Cir. 1983). The burden then shifts back to the employee to present sufficient evidence creating a genuine issue of material fact that the employer's reason is pretext for discrimination. *Todd*, 998 F.3d at 1216.

The ADA defines "disability" to include: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2); *see also* 29 C.F.R. § 1630.2(g). For the ADA, a qualified individual is one "who, with or without reasonable accommodation, can perform the essential functions" of her employment. 42 U.S.C. § 12111(8).

Rocket Mortgage moves for summary judgment arguing that Plaintiff cannot prevail on his discrimination claims because he cannot establish he was subjected to an adverse employment action or that the decision maker had knowledge of his disability.

18

An employee seeking to establish that he was discriminated against due to his disability must establish he was subjected to an adverse employment action because of his disability. *See Batson*, 897 F.3d at 1326. In Counts II and III, Monroe alleges that he was subjected to the adverse employment actions of being forced to resign and being denied his vested stock options. Doc. 1 ¶¶ 52, 62. Monroe has conceded the issue of his stock options, and thus the Court turns to Rocket Mortgage's argument that Monroe's resignation was not an adverse employment action.

"An employment action is considered 'adverse' only if it results in some tangible, negative effect on the plaintiff's employment." *Martin v. Eli Lilly & Co.*, 702 F. App'x 952, 956 (11th Cir. 2017) (quoting *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1261 (11th Cir. 2001)). "A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id.* (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)); *see also Menzie v. Ann Taylor Retail Inc.*, 549 F. App'x 891, 894 (11th Cir. 2013) ("An adverse employment action is an ultimate employment decision, such as discharge or failure to hire, or other conduct that alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee.").

Here, Monroe contends that he was constructively discharged, specifically that he was forced to resign because Rocket Mortgage would not honor his doctor's recommendation and provide him with a reduced work schedule. If established,

constructive discharge is an adverse employment action, but the threshold for proving constructive discharge is high. *Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1231 (11th Cir. 2001) ("The standard for proving constructive discharge is higher than the standard for proving a hostile work environment."). To prove constructive discharge under the ADA, Monroe must demonstrate that his working conditions were so intolerable that a reasonable person in his position would have been forced to resign. *Griffin v. GTE Florida, Inc.*, 182 F.3d 1279, 1283 (11th Cir. 1999). Whether an employee's working conditions are so intolerable is analyzed based on an objective standard. *See Phillips v. Harbor Venice Mgmt., LLC*, No. 8:19-CV-2379-VMC-TGW, 2020 WL 2735201, at *5 (M.D. Fla. May 26, 2020) (Covington, J.) (citing *Richio v. Miami-Dade Cty.*, 163 F. Supp. 2d 1352, 1367 (S.D. Fla. 2001)). A constructive discharge claim is "not a jury question unless a plaintiff presents substantial evidence that employment conditions were intolerable." *Siudock v. Volusia Cty. Sch. Bd.*, 568 F. App'x 659, 664 (11th Cir. 2014) (citing *Brochu v. City of Riviera Beach*, 304 F.3d 1144, 1155 (11th Cir. 2002)). Monroe fails to come forward with evidence that the conditions were so intolerable a reasonable person would be forced to resign.

Monroe argues that he specifically emailed Oesterreich on August 1, 2021, telling her that his doctor's note did not want him working more than 30 hours, forcing him to quit. He reminded her that he previously had a 30-hour-workweek accommodation and that he was told by human resources that he could return to a 30-hour workweek. Monroe was familiar with the procedure of requesting leave for

20

medical reasons and he chose not to comply with it. The Court finds this evidence insufficient to establish that Monroe's working conditions were intolerable.[12]

The resignation email upon which Monroe relies states, "since my doctor note does not want me working more than 30 hours this is forcing me to quit." Doc. 36-9. As an initial matter, there is no evidence the doctor's letter was ever provided to Rocket Mortgage before this lawsuit let alone before he resigned or within any reasonable period of time after he resigned. Moreover, review of Dr. Kaul's July 15, 2021, letter and the related note in the medical records reveals that Monroe was the one who called Dr. Kaul requesting the letter and dictating what it said. There is no evidence that Dr. Kaul evaluated Monroe before signing off on the letter. To the contrary, the evidence suggests otherwise as the phone call request from Monroe was the same day as the letter was dated. Significantly, although Monroe asserts he asked for an accommodation of a reduced work schedule, it is undisputed that he never completed the company's required paperwork for a medical accommodation request and never talked to Swift again after Swift sent him the request form to be completed.

---

[12] Monroe argues that the cases relied upon by Defendant are inapposite because this is not a "typical" constructive discharge case where an employer creates an intolerable work environment over a period of time that leads to a resignation. Instead, he submits his claim is premised on the theory that the denial of his requested accommodation made his working conditions intolerable forcing him to resign. Monroe cites to an out-of-circuit case which, like the case relied upon by the defense, similarly requires a showing that working conditions were made intolerable in order to support a finding of constructive discharge. *See Floyd v. Lee*, 968 F. Supp. 2d 308, 330 (D.D.C. 2013) ("A finding of constructive discharge depends on whether the employer deliberately made working conditions intolerable and drove the employee into an involuntary quit.") (citations omitted). In any event, Monroe's argument is a distinction without a difference as there still must be evidence that his working conditions were so intolerable that he was compelled to resign, and he fails to demonstrate that on this record.

Rocket Mortgage also argues that an increase in an employee's workload does not rise to the intolerable level that would compel a reasonable person to resign. Doc. 35 at 13 (citing *Wardell v. Sch. Bd. of Palm Beach Cty.*, 786 F.2d 1554, 1558 (11th Cir. 1986)). An increase in workload may, however, support a constructive discharge claim if the change in work conditions is so substantial and material that it alters the terms, conditions, or privileges of employment, *Austin v. FL HUD Rosewood LLC*, 791 F. App'x 819, 825 (11th Cir. 2019). Rocket Mortgage submits that the evidence shows that Monroe had the discretion to take advantage of incentive and bonuses by working longer hours. *See* Oesterreich's testimony at Doc. 41-5 at 20–21. In his response, Monroe does not refute this statement. Thus, Plaintiff fails to present evidence that his workload created an intolerable working environment or that there was a change in his work conditions that was so substantial and material that it altered the terms, conditions, or privileges of his employment. Rather, he reiterates that his request for a 30-hour workweek was due to his disability. But, as discussed above, Monroe never pursued a medical accommodation because he never returned the documentation to Swift.

Rocket Mortgage further argues that Monroe cannot establish he was discriminated against based on his disability because he cannot show that Sartor, who was the decisionmaker, was aware of his disability. Given that Sartor was copied on emails that had the subject line "RE: Ryan Monroe ADA Request" (Doc. 33-11), in a light favorable to Monroe, it is a much closer call as to whether Sartor was aware of Monroe's disability. Rocket Mortgage argues that Monroe's vague references to

22

Oesterreich of his need to attend therapy sessions were too imprecise and conclusory to put Sartor on notice of any disability under the ADA. Rocket Mortgage also contends that neither Sartor nor anyone in Senior Leadership had a conversation with Monroe about his specific conditions of stress and anxiety, and therefore they were unaware of his request for reduced hours being connected to any physical or mental impairment. Even if disputed questions of fact exist as to Sartor's awareness, that does not salvage Plaintiff's claim because he does not establish a connection between being denied a reduced workweek and his disability, particularly where he failed to comply with the company procedures for seeking an accommodation for medical reasons. By his own account, he did not want to have to go into all of his medicals again and it is undisputed he never provided medical support for his request.[13] Monroe's claims of discrimination fail because he cannot establish an adverse employment action and cannot establish that the denial of his request for a 30-hour workweek was because of his disability. Rocket Mortgage is entitled to summary judgment as to Plaintiff's discrimination claims in Counts II and III of the Complaint.

### C.    ADA and FCRA – Failure to Accommodate

In Counts IV and V of Plaintiff's Complaint, he sues Rocket Mortgage under the ADA and FCRA for failure to accommodate. Doc. 1 ¶¶ 67–86. An employer unlawfully discriminates against a qualified individual with a disability when the

---

[13] Of note, when Monroe received an ADA accommodation in 2020 of a 30-hour workweek, he was specifically advised that it was temporary, and that a request to extend it would require updated documentation. Doc. 33-5.

23

employer fails to provide "reasonable accommodations" for the disability—unless doing so would impose undue hardship on the employer. 42 U.S.C. § 12112(b)(5)(A); 29 C.F.R. § 1630.9(a). An accommodation qualifies as "reasonable," thereby making it required by the ADA, only if it enables the employee to perform the essential functions of the job. *See LaChance v. Duffy's Draft House, Inc.*, 146 F.3d 832, 835 (11th Cir.1998). The plaintiff bears the burden of identifying an accommodation, and of demonstrating that the accommodation allows him to perform the essential function of his job. *See Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1286 (11th Cir. 1997); *Willis v. Conopco, Inc.*, 108 F.3d 282, 283 (11th Cir. 1997). "[T]o trigger an employer's duty to provide a reasonable accommodation, the employee must (1) make a specific demand for an accommodation and (2) demonstrate that such accommodation is reasonable." *Owens v. Governor's Off. of Student Achievement*, 52 F.4th 1327, 1334 (11th Cir. 2022*), cert. denied sub nom. Owens v. Georgia Governor's Off. of Student Achievement*, 143 S. Ct. 2465 (2023) (citing *Frazier-White v. Gee*, 818 F.3d 1249, 1255–56 (11th Cir. 2016)). Only after the employee meets these requirements will the employer then be required to "initiate an informal, interactive process" with the employee "to discuss the employee's specific limitations, explore potential accommodations, and select the most appropriate accommodation for both the employer and the employee." *Owens*, 52 F.4th at 1334 (citing 29 C.F.R. § 1630.2(o)(3)).

Monroe argues that he triggered Rocket Mortgage's accommodation duties when he informed Oesterreich that he wanted a 30-hour workweek so that he could attend therapy sessions. An employee must identify his disability before an employer

is obligated to engage in an interactive process about accommodating that disability. *Owens*, 52 F.4th at 1334; *see also* 29 C.F.R. § Pt. 1630, App. § 1630.9 ("[A]n employer would not be expected to accommodate disabilities of which it is unaware."). Here, it is arguable whether Monroe identified his disability. But even if a question of fact exists as to whether he identified his disability, Monroe still had to link his disability to the requested accommodation by explaining how the requested accommodation could alleviate the workplace challenges posed by his specific disability. *Owens*, 52 F.4th at 1335. Critically, an employee must give the employer enough information to respond effectively to an accommodation request. *Id.* Monroe failed to do this.

"Under the ADA, an employer will not be liable for failure to accommodate if the employee is responsible for the breakdown of the interactive process." *D'Onofrio v. Costco Wholesale Corp.*, 964 F.3d 1014, 1022 (11th Cir. 2020), *cert. denied*, 141 S. Ct. 1435 (2021) (citing *Stewart*, 117 F.3d at 1287). Monroe was responsible for the breakdown in the process when he failed to respond to Swift by returning the completed leave form and in failing to provide any medical documentation in support of his request. In failing to provide any information regarding his need for a medical accommodation, Monroe prevented Rocket Mortgage from being able to assess the reasonableness of any accommodation.

Monroe responds that Rocket Mortgage never gave him the "appropriate documents" to complete for an ADA accommodation and no one followed up with him regarding his reference to having a "doctor note" in his August 1 resignation email. He argues that the Request for Leave form from Swift did not mention the ADA

and was not a "Reasonable Accommodation packet" like he previously completed in 2020.[14] Doc. 33 at 4. But this argument is inconsistent with his own testimony. Monroe testified he did not want to have to go into all of his medical issues again. Doc. at 41-1 at 71 ("I don't want to be off and dealing with the doctors and the doctor's note and the short-term disability company and Stacey Morris interrogating me and all that. I don't want to deal with that again, that makes it is (sic) worse for me, and [Swift] said okay. I said I want to work still 30 hours. And he said: okay. Well, you have to talk to your team leader for that, and that's when I called Cady at that time and said I don't

---

[14] As previously referenced, Rocket Mortgage submitted the Declaration of Attaway who states that when a request or accommodation is made, the employee is provided with typically either a request form or an accommodation packet. *See, supra,* n. 6; *see also* Doc. 36 ¶ 17. In his response to Rocket Mortgage's motion, Monroe vaguely argues the Court should disregard the Attaway Declaration because it is inconsistent with her deposition testimony and "borders" on being a sham. Doc. 48 at 10 n.10. As a preliminary matter, Plaintiff never filed a motion to strike the Attaway Declaration and his argument in a footnote is wholly undeveloped. Monroe fails to direct the Court to any testimony he contends is inconsistent. Under the sham affidavit rule, "[w]hen a party has given clear answers to unambiguous questions which negate the existence of any issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." *Van T. Junkins & Assoc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984). A court may strike an affidavit as a sham when the affidavit flatly contradicts the affiant's previous testimony "for the transparent purpose of creating a genuine issue of fact where none existed previously." *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1306 (11th Cir. 2016). As Plaintiff has not identified the contradictory testimony, the Court will not strike the Declaration of Attaway. And the Court does not find there to be any material inconsistency in Attaway's deposition testimony and her Declaration. Significantly, Attaway's Declaration and deposition both reflect that Plaintiff could submit either the leave request form or a doctor's note, *see* Doc. 36 ¶ 22; Doc. 41-4 at 7, but he was required to submit at least one. Doc. 36 ¶ 23. He did neither. Further, her Declaration and deposition testimony both provide that an employee seeking a request for leave or an accommodation are to be directed to their Team Relations Specialist. *See* Doc. 41-1 at 9–10; Doc. 36 ¶ 25. Here, Oesterreich referred Monroe to TRS Swift to address any medical request Monroe wanted to make. The evidence reveals Monroe was not interested in going into his medicals again. Monroe's failure to follow through with Swift and to provide him any medical paperwork defeats Monroe's claim that Rocket Mortgage failed to provide him an accommodation under the ADA.

want to be off on a leave of absence. I want to work 30. I want to just get my doctor involved so you don't make me work 70 hours again."). But he never got his doctor involved; it is undisputed he never provided the July 15, 2021 doctor's note or any other medical support for his request to Rocket Mortgage.[15]

Rocket Mortgage also argues that Monroe's demand for a 30-hour workweek was not engaging in the interactive process. Indeed, the Eleventh Circuit has made clear that "an employer is not required to accommodate an employee in any manner that the employee desires—or even provide that employee's preferred accommodation." *Owens*, 52 F.4th at 1335 (quoting *D'Onofrio*, 964 F.3d at 1022).

Although Monroe received an accommodation of a 30-hour workweek in 2020, the accommodation was temporary and only approved for six months. Doc. 41-1 at 48. At the time of that request, Monroe had his doctor complete the medical form in support of the requested leave. Monroe was aware that the accommodation would be reviewed on a semi-annual basis. Doc. 41-1 at 43–44. The accommodation was approved on a temporary basis of 30 hours per week for six months after which time the company could request updated documentation. Doc. 41-1 at 54. In June 2020, Monroe submitted a letter from his doctor saying he can now work 40 hours per week and more at his discretion. *Id.* at 55. He did not submit a medical note after that stating otherwise. "[E]ven if an employer has voluntarily provided accommodations to the employee historically, that employer is not obligated to continue providing them and

---

[15] The last doctor's note for Monroe received by Rocket Mortgage was in June 2020 stating that Monroe can work 40 hours per week, or more at his discretion. Doc. 41-1 at 55–56.

can discontinue such when they exceed what is legally required under the ADA."
*D'Onofrio*, 964 F.3d 1014, 1022. Thus, because Monroe received the 30-hour
workweek accommodation in the past did not mean he was entitled to demand the
same accommodation in the future without complying with the company procedures
and engaging in the interactive process. *See Stewart*, 117 F.3d at 1286 ("under the ADA
a qualified individual with a disability is not entitled to the accommodation of [his]
choice, but only to a reasonable accommodation"). Monroe failed to engage in the
interactive process to allow Rocket Mortgage the opportunity to assess the
reasonableness of any requested accommodation. Therefore, Plaintiff cannot prevail
on his claims of ADA violation for failure to accommodate, and Rocket Mortgage is
entitled to summary judgment on the Plaintiff's claims in Count IV and V.

### D.    ADA and FCRA - Retaliation

In Counts VI and VII, Plaintiff sues Rocket Mortgage for retaliation in violation
of the ADA and FCRA. He alleges that he was retaliated against and suffered adverse
employment actions—being forced to resign and loss of stock options—because he
requested accommodations for his disability. Title V of the ADA prohibits retaliation
against an individual for opposing any discriminatory act or practice or making a
charge of disability discrimination. 42 U.S.C. § 12203(a). A plaintiff can establish a
*prima facie* case of retaliation by proving the following elements: 1. he engaged in a
statutorily protected expression; 2. he suffered an adverse employment action; and 3.
there was a causal connection between the two. *Frazier-White*, 818 F.3d at 1258. In his
response to Rocket Mortgage's motion for summary judgment, Monroe concedes any

claim related to his stock options.[16] Doc. 48 at 2, 14. Because his remaining alleged adverse employment action is his separation from employment, he acknowledges his retaliation claims are subsumed in his failure to accommodate claims. Plaintiff concedes his retaliation claims under the ADA and FCRA. *Id.* at 14. It follows that Rocket Mortgage is entitled to judgment in its favor on Plaintiff's retaliation claims in Counts VI and VII of the Complaint.

## IV.   CONCLUSION

It is clear that Plaintiff was a faithful and hard-working employee whose work product was valued by the company. By all accounts, he was a "fantastic team member." Monroe's loyalty and commitment to Rocket Mortgage for over 16 years is admirable. It is unfortunate that Plaintiff's career at Rocket Mortgage ended as it did. However, Rocket Mortgage's conduct was not unlawful under the ADA, FMLA, or FCRA.

Monroe has conceded his retaliation claims. The Court finds no FMLA interference, no adverse employment action, and no violations of the ADA and FCRA based on discrimination or a failure to accommodate.  As no genuine issues of material fact exist, Rocket Mortgage is entitled to summary judgment in its favor on Monroe's FMLA interference claim and on his claims of discrimination, retaliation, and failure to accommodate under the ADA and FCRA. Accordingly, it is

---

[16] Monroe did not vest in his stock options at the time of termination based on his disability because he would have had to be deemed disabled by a long-term disability insurance program or determined disabled by the U.S. Social Security Administration, neither of which occurred. Docs. 41-1 at 82–84; 41-2.

**ORDERED AND ADJUDGED**:

1.      Plaintiff's Motion for Partial Summary Judgment (Doc. 33) is **DENIED**.

2.      Defendant's Motion for Summary Judgment (Doc. 35) is **GRANTED**.

3.      The Clerk is directed to enter Judgment in favor of Defendant Rocket Mortgage and against Plaintiff Ryan Monroe.

4.      The Clerk is further directed to terminate any pending motions and deadlines and **CLOSE** this case.

**DONE AND ORDERED** in Tampa, Florida on September 25, 2024.

Charlene Edwards Honeywell
United States District Judge


Copies to:
Counsel of Record
Unrepresented Parties, if any